PRICE v. PRICE.

(Filed November 24, 1903.)

1. SPECIFIC PERFORMANCE—*Legacies and Devises—Contracts—Issues.*

In a suit against devisees and executors for specific performance of a contract to devise certain land, it is proper to submit to the jury whether testator devised the land as he contracted.

2. EVIDENCE—*Specific Performance—Records—Wills.*

Where a devisee seeks the specific performance of a contract to devise certain land, executed on the compromise of a certain suit, the record in such suit is not admissible in evidence.

3. EVIDENCE—*Specific Performance—Contracts—Wills.*

In a suit by a devisee for the specific performance of a contract to devise land, evidence as to what land the devisee had in possession, when and where it had been surveyed, and other evidence of like character, is admissible to locate the land received by the said devisee under the will.

4. SPECIFIC PERFORMANCE — *Contracts — Wills — Questions for Court.*

In a suit for the specific performance of a contract to devise certain land, the jury having found that the land devised in the will was the same as that contracted to be devised, it became the duty of the court to construe the contract and the will for the purpose of ascertaining whether the will was a substantial execution of the terms of the contract.

5. SPECIFIC PERFORMANCE— *Contracts—Consideration—Wills—Equity.*

A contract to devise land in consideration of the settlement of a family controversy relative to certain lands is valid and may be enforced in a court of equity.

6. WILLS—*Specific Performance—Contracts—Estates—Legacies and Devises.*

Where a testator contracts to devise certain lands to his children, "with limitations," he may attach such limitations as are in his judgment proper.

7. ELECTION OF REMEDIES—*Equitable Election—Specific Perform-*
    *ance—Wills—Legacies and Devises.*

   A devisee, seeking specific performance of a contract to devise lands,
        cannot be required to elect whether he will take under the will
        or under the contract.

MONTGOMERY, J. dissenting.

ACTION by J. Mc. Price against B. F. Price and others,
heard by Judge *C. M. Cooke* and a jury, at August Term,
1903, of the Superior Court of UNION County. From a judg-
ment for the defendants both the plaintiff and the defendant
J. C. Price appealed.

   *A. M. Stack,* for the plaintiff.
   *J. A. Lockhart & Son, Burwell & Cansler, Adams, Jerome
& Armfield, R. L. Stevens* and *R. W. Lemmond,* for the vari-
ous defendants.

   CONNOR, J. It is clear that the contract of December 6,
1899, entered into between J. W. Price and his children, the
plaintiff and defendants herein, was well understood between
them, and that it was the purpose of the parties to settle the
unhappy controversy growing out of the execution of deeds
to the father by his former wife and the mother of the plaintiff
and defendants for her maiden land. It will be observed that
J. W. Price had married on December 4, 1855, and that this
deed was executed during the year 1859. The wife and
mother survived until 1881. Two of her five children brought
suit in 1899 charging that their father had procured the exe-
cution of the deed by undue influence and persuasion. The
complaint further alleges that since the death of his wife he
had married a second time and had other children. They
further allege that the father had settled plaintiffs on lands
other than those conveyed to him by his wife, but had given
them notice to vacate them, and advertised the said land for

sale. The father, in that suit, filed his answer admitting a portion of the allegations, denying others and setting up affirmative defences. It appears that on September 29, 1889, the father had a portion of his land surveyed, plats made thereof and divided into lots, with a view to partitioning it among his children, and that in making such partition he allotted a tract of 183 acres to the plaintiff J. Mc. Price, who was at that time in possession thereof. It will be further observed that on December 6, 1899, just forty-four years had passed since his marriage to the mother of his children. It appears from the pleadings that they had all reached their majority. It is not unreasonable to assume that he was approaching the allotted limit of human life. A second wife and one child of his old age were dependent upon his providence and care. The years of his strength had been devoted to the rearing of the five children of his first marriage, and he had made provision for his oldest sons. One son, it appears, was of feeble mind. The daughter was unmarried, and, the plaintiff says, "too old to ever be a mother." One son, B. F. Price, was unmarried, and it would seem had remained at home with his father. The two sons who were married had been settled upon parcels of land and had received their portion of the personalty. In this condition of his affairs and family we can well understand that he desired to settle the controversy and be at peace with his children. Placing ourselves in the position of the parties, we are better able to understand their conduct and construe the contract which they made looking to this end. Thus, on December 6, 1899, they executed the paper-writing, the terms and provisions of which we are called upon to construe. Following the formal parts thereof, they proceed to say: "That the said parties of the first part, children of J. W. Price, in consideration of an agreement on the part of J. W. Price to devise to the parties of the first part, J. Mc. Price, J. Robert Price, Sarah E.

Price, John C. Price and Benjamin F. Price, respectively, with limitations, the lands belonging to J. W. Price, including that herein conveyed or a part thereof, which have been divided and allotted to the several parties of the first part according to the two plats of the lands made by L. A. Helms, surveyor, and dated September 20, 1889, the part devised to Benjamin F. Price to be charged with the support and maintenance of Margaret M. Price, wife of J. W. Price, if she survives him, which plats are here referred to as a part of this deed, and to which reference is made for the location and description of the lots, of which the respective parties have been put in possession." Then follow appropriate words by which the children "remise, release and forever quitclaim unto J. W. Price all of their right, title and interest in and to the lands conveyed to his by their mother, which is described by metes and bounds. Immediately after the habendum is the following clause: "The further consideration of this deed is an agreement on the part of J. W. Price to devise to J. Robert Price and his heirs the David Phifer place of one hundred acres, of which he is now in possession, but is not described in the plat referred to hereinbefore." This contract was duly proved and recorded January 17, 1900, and on the same day the said J. W. Price executed his will. He gives to his wife and children his household and kitchen furniture, stock on hand and some small legacies. He provides that his stock, etc., shall be used for the benefit of his children "while said family shall remain together," mentioning the fact that his sons J. Mc. Price and J. Robert Price have had their full share of his personal property. He then gives to B. F. Price and Sarah E. "three hundred dollars jointly to assist them in the support and maintenance of my son, J. C. Price, with whose support and maintenance I charge this sum and the lands devised to them in the sixth item of this will." In the

133——32

fourth item he devises, "in lieu of the dower and thirds" to which his wife was entitled, to her and to B. F. Price several tracts of land, including his dwelling house and outhouses, aggregating 351 acres. The several tracts, he says, "are more particularly shown on a plat made by L. A. Helms on September 20, 1889, to which plat reference is hereby made." This land he gives after the death of his wife to B. F. Price in fee. He further provides and directs that his son J. C. Price and his daughters Sarah E. Price and Mary E. Price (the child by his second wife) shall have a home with his son and his wife until they shall severally marry. This provision is to continue in the event of the death of B. F. Price, that is, they shall continue "to have a support from and home upon the land." In item 5 he gives to his daughter Sarah E. Price three tracts of land aggregating 162½ acres, two of which tracts are shown on the L. A. Helms plat. One tract of 11½ acres, he says, was purchased in 1897 after the plat was made. In item 6 he gives to his son B. F. Price and his daughter Sarah E. Price, "charged with the support and maintenance of my son J. C. Price and subject to the provisions of item 4," three tracts aggregating 130¼ acres, two of which tracts are shown on the L. A. Helms plat. The other tract of 10¾ acres was purchased in 1897. In item 7 he gives to his son J. Mc. Price 183 acres, shown on the L. A. Helms plat. To this devise are certain limitations, which will be referred to later on. In item 8 he devises to J. Robert Price the David Phifer land, containing 100 acres. To this devise are certain limitations. All other real estate owned by him is directed to be sold by his executors, and after paying debts and pecuniary legacies the balance is to be divided equally between his children. In item 11 he says that in order to make more definite and certain the identity and location of the lands hereinbefore devised and the respective persons to whom they are devised "I have written the names

of each and every of the parties within the boundaries of the plats made by L. A. Helms and M. D. L. Biggers, etc." The last named plat being of the two small tracts purchased in 1897. By a codicil executed September 24, 1901, it appears that with the consent of his son J. Robert Price he exchanged the Phifer land for a tract of 172 acres, which he devises to his said son. The date of his death does not appear in the record.

This action is brought November 14, 1902, by the plaintiff against his brothers and sisters and the executors of J. W. Price. The plaintiff alleges that the said J. W. Price "failed and refused to perform his said contract in that he did not devise to him any part of the two tracts of land conveyed to said J. W. Price by his wife and described in the contract of December 6, 1899," and further, that whereas he contracted to devise said land to his children "respectively, with limitations," he placed no limitations on the land devised to B. F. and Sarah E. Price, while he did place limitations on the lands devised to the plaintiff and J. Robert Price. He says that "the said J. W. Price contracted to devise to J. Mc. Price (plaintiff) and his brothers and sisters the same quantity and quality of estate in said lands, yet B. F. Price and Sarah E. Price, instead of getting two-fifths with the same limitations that were placed on the plaintiff, get in fee-simple more than three-fourths of the land contracted to be devised to the five children of M. L. Price, and get all of the two tracts that were in litigation and described in Exhibit C; that he failed to devise any land to J. C. Price, who is weak-minded and incapable of looking after his rights, and who is an unmarried man without children and not likely to ever marry and have children; that Sarah E. Price is unmarried and too old now to ever become a mother, and if the same limitations had been placed on her devise that was on plaintiffs', as said J. W. Price contracted to do, then this plaintiff or his children

would certainly have gotten a part of her share at her death."
He makes the same complaint in regard to land devised to
B. F. Price. He further complains that his father had sold off
part of his land and had also sold some cross-ties. For these
alleged breaches of the contract on the part of his father he
demands judgment that the defendants be ordered to specifi-
cally perform said contract and to convey to him, the plaintiff,
in fee-simple, one-fifth interest in the land of J. W. Price as
shown in the said two plats, including the two tracts of land
particularly described in the deed of compromise, and for
three hundred dollars damages; also that a decree be made de-
claring the plaintiff and his brothers and sisters owners and
tenants in common of said land shown in said plats, etc.

The defendants admit the execution of the contract and
the facts leading up thereto, but they deny the construction
put upon it by the plaintiff, and allege that their father in all
respects performed his part of said contract in the will herein-
before set out. Upon the cause coming on for hearing, it ap-
peared that J. C. Price was mentally incapable of attending
to his own affairs, and a guardian *ad litem* was duly ap-
pointed for him. The Court, after objection by the plaintiff,
submitted the following issue to the jury: "Did J. W. Price
devise to J. Mc. Price the land he contracted to do by the
instrument of December 6, 1899?" To which the jury re-
sponded in the affirmative. The issue was properly submitted
to the jury for the purpose of fixing the single fact in con-
troversy, to which it is directed. The plaintiff submitted two
issues: 1. What lands or interest in lands did J. W. Price
contract to devise to the plaintiff J. Mc. Price? 2. What
lands did J. W. Price devise to the plaintiff? To the refusal
of his Honor to submit these issues the plaintiff excepts. His
Honor's ruling was entirely correct. The plaintiff offered to
introduce the record in the original suit of J. Mc. Price and
Robert Price against J. W. Price, to which the defendants

objected, and upon the objection being sustained the plaintiff excepted. His Honor's ruling in this respect was correct. The plaintiff then introduced the original contract and the will of J. W. Price, and also the original plats made by L. A. Helms on September 20, 1889. The plaintiff testified that he knew the plats and the handwriting of his father, and the names of the children written upon the plats designating the several tracts of land are in the handwriting of J. W. Price; that those names were not there the day the contract was made; he says he knows the land which his father owned at that time; that he also owned some other lands which are not described in these plats; that the expression "the lands herein conveyed" refers to the lands that were then in litigation; that in 1899 the lands had not been allotted to the children; that he did not devise any part of the land in litigation to him. He says that he was living on the 183 acres; that he moved on it about seven years ago, but had been working it longer; that the tract originally contained 226 acres, and that the surveyor cut off 47 acres of the land, which was not allotted to him; that there are some 55 acres of the land which is not willed to any of the parties. He says that he was with the surveyor and his father when the lines were run; that he has been in possession of the 183 acres since 1889; that he saw the plat at the time of the compromise; that it was on exhibition; that he had said to Mr. Haywood that he was to get the 183 acres by the compromise; that he was to get over that. The plaintiff rested.

The defendants introduced Helms, the surveyor. He said that he surveyed the land and made a plat in 1889; that the plaintiff was along with them when they ran the lines; that when the 183 acres were run off for the plaintiff he was present; that J. W. Price would show him where he wanted a division for a certain one of his children, naming the one. To all of this testimony the plaintiff objected, and, upon his

objection being overruled, excepted. His Honor said that
he admitted the testimony for the purpose of locating the
lines. We are of opinion that it was competent for that pur-
pose. The witness then testified in regard to the surveying
of the other lots. Haywood was then introduced and testified
to substantially the same. In answer to a question by the
Court to locate the land,' he said: "There are 183 acres. It
is right near me. He has been living there, I think, about
nine or ten years. He has been controlling it, I think, ever
since I moved there in 1888. I know he has had control of
it ever since I went there. I remember when Helms surveyed
the land. I saw them running it. I don't remember whether
I saw Mack with them or not. I was just working in the
field when they came along. I was not living on the land that
they ran for him. I remember the time that Mack and his
father had a compromise of their suit." The plaintiff objected
to this testimony, and, upon its being overruled, excepted.
The witness further said that "he told me when I first went
there that his father told him to come down there and settle
it up; that he would fix it up so that he could get it some
day; he told me just after the compromise about having it
settled, or something that way." This testimony was objected
to, objection overruled, plaintiff excepted. There was other
testimony of the same character, all of which was directed
to the location of the land. The Court stated that the fore-
going evidence was allowed only for the purpose of locating
this land which the plaintiff got in the will or contract. To
which the plaintiff excepted.

The Court instructed the jury that if the testator J. W.
Price had allotted and put J. Mc. Price in possession of a
certain tract of land, that was the lot of land he contracted
to devise to J. Mc. Price; and, if they find from the evidence
that the lands devised to the said J. Mc. Price is the same
lot or lots that was allotted to J. Mc. Price, and of which he

was put in possession by J. W. Price, they will answer the first issue "Yes." To which plaintiff excepted. The instruction is correct. The plaintiff requested the Court to instruct the jury that if they believed the evidence the plaintiff did not get under the will the lands that J. W. Price contracted to devise to the plaintiff J. Mc. Price. Upon his Honor's refusal to so instruct the jury the plaintiff excepted. The plaintiff requested the Court to further instruct the jury that under the contract the plaintiff was to get an undivided one-fifth interest in all the lands described on the plat of Helms, referred to in the deed of compromise; that the plaintiff was, under the contract, to be devised a one-fifth interest in value of the lands described in the deed of compromise. To the refusal to give these instructions the plaintiff excepted. The plaintiff then requested the Court to construe the deed of compromise and not leave any part thereof to the jury.

This issue being answered, it became the duty of the Court to construe the contract and the will for the purpose of ascertaining whether the will was a substantial execution of the terms of the contract, and his Honor so held. In our opinion his Honor's ruling was entirely correct. There can be no question that a contract upon a sufficient consideration to devise lands is valid and may be enforced in a court of equity, the decree being so drawn as to declare the parties to whom the land is devised, or, in the event of a failure to devise, the heirs at law to hold such lands in trust for the persons to whom the testator had contracted to devise them.

"The validity of a contract by which one of the contracting parties agrees with the other, either for a good or valuable consideration, that he will make a will devising his property, whether real or personal, is valid beyond a doubt." Underhill on the Law of Wills, sec. 285. "The party who has made the promise to give property by his will may have made some testamentary provision for the other party to the con-

tract which the latter claims is not a sufficient compliance with
the terms of their agreement. This is usually the case where
the terms of the contract describing the land or other property
to be given are vague, indefinite and open to doubtful inter-
pretation. Generally a substantial rather than a literal com-
pliance with the terms of the contract is all that can be re-
quired." *Ibid.*, sec. 290.

The principles by which courts of equity are governed in
sustaining and enforcing such contracts as the one set out in
this record are well settled and strongly stated by *Lord Hard-
wicke* in the case of *Stapilton v. Stapilton*, 1 Atk., 2 (2 White
& Tudor's L. C., 1675, star p. 824). In speaking of a con-
tract made for the purpose of settling a family controversy he
says: "It was to save the honor of the father and his family,
and was a reasonable agreement; and, therefore, if it is possi-
ble for a court of equity to decree a performance of it, it ought
to be done   *   *   *   and, considering the consequence of
setting aside this agreement, a court of equity will be glad
to lay hold of any just ground to carry it into execution, and
to establish the peace of a family." In the notes to that case
it is said : " 'From the case of *Stapilton v. Stapilton*,' observes
*Lord Chancellor Sugden*, 'down to the present day, the cur-
rent of authorities has been uniform, and wherever doubts and
disputes have arisen with regard to the rights of different
members of the same family, and fair compromises have been
entered into to preserve the harmony and affection, or to save
the honor of the family, those arrangements have been sus-
tained by this Court, albeit, perhaps, resting upon grounds
which would not have been considered satisfactory, if the
transaction had occurred between mere strangers.' *Westby v.
Westby*, 2 D. & War., 503." "The compromises of doubtful
claims, whatever may be the actual rights of the parties, have,
from the policy of preventing litigation, been generally upheld
in all enlightened systems of jurisprudence.   *   *   *   And

where a deed of family arrangement has been acted upon for many years, and no fraud is imputed, the Court will not set aside or alter such deed upon the mere allegation by some of the parties to it that the provisions did not carry out their intentions. *Bentley v. Mackay,* 31 Beav., 143; 10 W. R. (L. J.), 873.

"Fair compromises, especially between members of a family, are favorably looked upon by courts of equity, their object being to prevent or put an end to litigation and to preserve the peace and property of families." Beach Mod. Eq., 1083.

*Gaston, J.,* says: "The agreement was confessedly entered into for the purpose of quieting disputes between the children of the same father, in relation to the disposition of his property; it is apparently equal; it is not denied to be fair; and was deliberately assented to as a proper and just family arrangement. Such arrangements are upheld by considerations affecting the interests of all the parties, often far more weighty than any considerations simply pecuniary." *Bailey v. Wilson,* 21 N. C., 182 (189).

Guided by these precedents of great and wise Chancellors, we have no difficulty in sustaining the contract and will made in pursuance thereof.

The plaintiff is the only one of the parties to the contract who complains of the disposition made by his father of his property. He points out a number of respects in which he says his father "failed and refused" to comply with his promise. Many of the complaints refer to matters in which he is not interested, and, if true, he has no right to complain. The two objections which affect him and which were relied upon in the argument are, first, that he failed to devise to the plaintiff any interest in or any part of the two tracts of land which were in litigation in the suit; that he gave B. F. Price and Sarah E. Price three-fourths of his land and gave

none to J. C. Price. The last suggestion is not sustained by an examination of the will. B. F. Price and his mother received for their joint lives, with remainder to B. F. Price, 350¼ acres, charged with the support and maintenance of J. C. Price and Sarah E. Price. It is evident that this land is to be a home for the family, and the charge extends beyond the life of B. F. Price. Sarah E. Price received 102 acres, and 130 acres are given to them jointly charged with the support and maintenance of J. C. Price. The entire number of acres devised is 925. Treating the devise of 130 acres as in trust for J. C. Price, these three received 555 acres, which is eighty-seven acres in excess of three-fifths of the whole, charged, however, with the life-estate of the mother in a portion of it, and the support of the family in the whole. Whereas the plaintiff received 183 acres, of which he has been in possession for more than ten years, and which is but two acres less than one-fifth of the whole number devised. It is clear, upon the testimony, including the contract, the plats and the will, that it was understood by all the parties that the plaintiff was to have the 183-acre lot. The total number of acres devised being 925, the number of acres in the two lots "herein conveyed" is 463, which leaves of the other lands 462 acres. The plaintiff says: "I was to get the 183 acres by the compromise. I was to get over that." Deducting the 183 acres from 462 leaves 279 acres to be divided among the other four children. Give the plaintiff ninety-two acres, being one-fifth of the 463 acres, in addition to the 183 acres which he says he was to receive, and he would have 275 acres. One-fourth of the 279 acres left to be divided between the four children would give them each sixty-nine acres, to which add ninety-two acres, one-fifth of the 463, and each of them would receive 162 acres, thus giving the plaintiff 113 acres in excess of each of the others. This, too, in the light of the fact that he has used and occupied the 183 acres for more than ten

years and without any regard to the provision for the wife of J. W. Price in lieu of her dower. This result would seem to exclude the contention of the plaintiff as to the intention of the parties in making the contract. But it is manifest that at the time the compromise was made the plats were "on exhibition," and that the parties understood what tracts were to be devised to each of them. While the names of the several children were not on that day written on the plats, the testator in his will made on the day it was recorded, says that in accordance with the terms of the contract "he had written the names of each and every of the parties within the boundaries on the plats," and they so appear in evidence. The plaintiff is not interested in the disposition of the land as among the other children, it being shown that he has received all to which he is entitled. There is no suggestion that the land devised to him is not of equal value with the other shares. If it were necessary to do so, the reasons which controlled the testator in the disposition of the other lands could easily be pointed out. In truth, they are apparent upon the face of the will. Much was said on the argument in regard to the meaning of the words "or a part thereof," as to whether they referred to the land "herein conveyed," or the other lands of the testator. I am unable to see that it is material what view is taken of this question. He devises all of the lands "herein conveyed" save a few acres, and that he directs to be sold and the net proceeds to be divided among his children. The plaintiff, however, says that the words "with limitations" are to be understood as an agreement to place the same limitations upon the lands given to each of the children. If not so, that they are so indefinite that the Court cannot specifically enforce a compliance with them, thus rendering the entire contract void for uncertainty. The words are to be construed as leaving in the testator the liberty of attaching such limitations as in his judgment he thought proper.

It is evident that there were reasons why the same limitations should not be attached to the land devised to each of the children.   Their condition in life was different; some were married and others were single.   The plaintiff says the daughter was "too old to become a mother."   Again, it is evident that some provision must be made for the support of J. C. Price. By a proper construction of the contract the testator reserved the right to attach such limitations as he saw fit.   If it could be seen that he had exercised this right arbitrarily or unjustly, or that he had abused the right thus reserved, it is possible that a court of equity would, so far as possible, repair the wrong thus done the testator's children.   However this may be, it is evident that the plaintiff alone complains of the limitations attached to the devises, and he places his objection upon very untenable ground, that if the limitations had been otherwise, possibly his maiden sister and his bachelor brothers would have died without children, and either he or his children would derive some benefit therefrom.   It can hardly be supposed that any of the parties had such remote contingencies in mind. There was evidently no speculation being done upon the death of maiden sisters and bachelor brothers for the benefit of nephews and nieces.   We can easily see why no limitation was placed upon the land given to B. F. Price.   This land was to be a home and a source of support to the feeble-minded brother and maiden sister so long as they lived.   In respect to the land given for the support and maintenance of J. C. Price, a reasonable construction of the language would impress a trust upon the legal estate, and it is more than probable that, upon the death of J. C. Price, the devisees of the legal title would hold in trust for his heirs at law, of whom the plaintiff would be one.   J. R. Price, to whose land limitations are attached, makes no complaint.   His Honor, however, without objection on the part of the defendants, construed the contract to mean that the limitations should not extend beyond

the wife and children of J. Mc. Price, and adjudged that the lands devised to J. Mc. Price should be held by him during the term of his natural life, then by his wife and children during the life or widowhood of his wife, and, at her death or coverture, by his children in fee, and we do not understand that either of the parties except to this portion of the judgment. The contract made by the parties, having in view a family settlement of property and compromise of all matters in controversy, should receive a liberal construction and be sustained unless violence is done to some well established principle of law. After a careful consideration of the entire record, I think the testator has substantially complied with the terms of the contract and that his Honor's judgment in that respect was correct and should be affirmed.

If this will should be set aside and the contract rescinded, the result would be that the compromise of the original suit would also be rescinded, leaving the plaintiffs J. Mc. Price and J. R. Price litigants with their brothers and sisters, reviving the animosities and bitterness which it was the last will and desire of their father to bury. The result of again launching them upon this troublous and uncertain sea of litigation over the acts of their father and mother would be deplorable. We do not think that there is any principle of law controlling the construction of contracts which makes it our duty to set aside the will of the testator, convinced as we are that he, in good faith, dealt by his children in accordance with the spirit if not the letter of his contract. The judgment of this Court should leave them as he did in respect to their property rights.

Judgment affirmed.

APPEAL OF DEFENDANT JOHN C. PRICE.

CONNOR, J. In this case, on the suggestion of the plaintiff that J. C. Price did not have sufficient mental capacity to attend

to his own business, a guardian *ad litem* was appointed for him by the Court, and an answer filed for him by the guardian. Afterwards, the other defendants suggested that J. C. Price had sufficient mental capacity to attend to his own business, and by consent of all the parties to the action it was ordered by the Court that the question of his mental capacity to transact his own business be inquired into, as is provided in section 1670 of The Code. In the same order, it was directed that the answer had been filed by the guardian *ad litem* should be temporarily withdrawn. The jury, for the trial of the issue as to mental capacity of J. C. Price, returned for their verdict that he was not competent to attend to his own business. Afterwards the Court ordered a reference to ascertain which would be the more advantageous for said J. C. Price to take under the will or under the contract; and it was adjudged further, that the said contract and will presented a proper case for the exercise of the doctrine of election.

We think there was error in the making of the order of reference. Election, in equity, is a choice which a party is compelled to make between accepting a benefit under an instrument and the retention of some property already his own which is attempted to be disposed of in favor of a third party by virtue of the same instrument.

The doctrine of election does not arise out of contract, and the rights which J. C. Price had in the premises grow out of the deed of settlement and J. W. Price's contract to devise the land as therein set forth. If the deed from the defendant's mother to his father J. W. Price had been set aside on the ground of fraud in the suit which was settled by compromise, and J. W. Price had then attempted by his will to devise J. C. Price's interest in the land which descended to him through his mother to another person, and also a portion of his own land to J. C. Price, then the doctrine of election might be invoked against J. C. Price. But there was no adjudication

PRICE *v.* PRICE.

in the action between the parties concerning the alleged fraud of J. W. Price in the suit which has been compromised. All the children, as we have seen, in the plaintiff's appeal, remised, released and quitclaimed their interest in the land of their mother to their father J. W. Price, and J. C. Price's rights growing out of that compromise and settlement, are contained in the deed of settlement, and therefore rests upon contract.

Error.

PLAINTIFF'S APPEAL.

MONTGOMERY, J., dissenting. It appears from the pleadings in this case that the plaintiff J. Mc. Price and the defendants B. F. Price, John C. Price, J. Robert Price and Sarah E. Price, are children of the defendant J. W. Price and M. L. Price, his wife (both now deceased), who were married early in 1859; that within a few months after the marriage J. W. Price, the husband, received a deed for two tracts of land belonging to his wife, through the intervention of a trustee, for the alleged consideration of $3,000; that upon the death of M. L. Price in 1881, the plaintiff in this action and his brother J. Robert Price instituted an action in 1889 in the Superior Court of Union County against their father J. W. Price and their brothers J. C. Price and B. F. Price and their sister S. E. Price (the brothers and sisters being made defendants doubtless because they would not join in the action as plaintiffs) for the purpose of having the deed from their mother to their father declared void for fraud and undue influence, alleged to have been practiced and exerted by the father on the mother; that that action was compromised and dismissed, each party to pay his own costs, in December, 1899, the compromise being on the following terms: The children above-mentioned of J. W. Price remised, released and forever quitclaimed all the right, title and interest

which they had as heirs at law of their mother, M. L. Price, in and to the two tracts of land which were in litigation, to J. W. Price, and J. W. Price in consideration of the compromise and of the conveyance made to him by his children agreed to devise to them respectively, with limitations, the land belonging to J. W. Price, including that herein conveyed as a part thereof, which had been divided and allotted to the several parties of the first part, according to the two plats of the land made by L. A. Helms, surveyor, and dated the 20th September, 1889, the part devised to B. F. Price to be charged with the support and maintenance of M. L. Price, wife of J. W. Price, if she survives him, which plats are here referred to as a part of this deed, and to which reference is made for the location and the description of the lots, of which the respective parties have been put into possession.

J. W. Price made his last will and testament in which he devised to the paintiff "for his life and after his death to his wife and children for the terms of the life or widowhood of his wife with the remainder in fee-simple to his children, if he die having issue surviving him, a certain tract of land of 133 acres," included in the Helms plat but not in the two tracts which were formerly the property of his deceased wife, M. L. Price. There was a further limitation that if J. Mc. Price died without leaving issue surviving him the tract of land devised to him should revert to all his "other heirs equally in fee-simple, my grandchildren taking *per stirpes* if their parents be dead." The testator further devised to his son J. Robert Price, with exactly similar limitations, another tract of land; he made provision for the support of his son J. C. Price out of the profits of certain of his lands, and he devised to his other son and daughter in fee-simple certain other of his tracts of land.

The plaintiff's contention is that in two respects at least the devise was not a full and true execution of the deed of

settlement and compromise, the compromise having been re-
duced to writing executed by the parties, probated and regis-
tered, and that, therefore, the land mentioned in the deed of
settlement belongs to himself, J. Robert Price, J. C. Price,
B. F. Price and Sarah E. Price as tenants in common, in
equal shares. First, that according to the terms of the com-
promise the whole of the land (two tracts) formerly belong-
ing to his mother was to have been devised to himself and
his brothers and sisters above-mentioned, and that the whole
of it was not so devised; and, second, that his father devised
to him only a life-estate with limitations over to his brothers
and sisters, or their issue in case he died without issue, in a
tract of 183 acres not embraced in the land formerly belong-
ing to his mother, and placed no limitations in the devise to
his other children, except that of J. Robert Price, who was a
party plaintiff with him in the suit that was compromised.

As to the first branch of the plaintiff's contention he can-
not be heard to complain. Under the terms of the compro-
mise, the father was to devise to the parties named "respect-
ively, with limitations, the land belonging to J. W. Price,
including that herein conveyed as a part thereof, which has
been divided and allotted to the several parties of the first
part, according to the two plats of land made by L. A. Helms,
surveyor, and dated the 20th September, 1899, * * *
which plats are here referred to as a part of this deed, and to
which reference is made for the location and description of
the lots of which the respective parties have been put in pos-
session." And in item 7 of the will the testator said: "I
will and devise to my son J. Mc. Price for his life, and after
his death to his wife and children, for the term of the life or
widowhood of his wife, with the remainder in fee to his chil-
dren, if he die having issue surviving him, a tract of land in
Union County, N. C., containing 183 acres more or less,

133——33

adjoining the Givens land, the Thompson land (now Rodman's), the King land and the 100-acre tract devised to B. F. Price and Sarah E. Price, lying on the south side of Twelve Mile Creek, being more particularly described on a plat made by L. A. Helms, surveyor, on the 20th September, 1889, to which reference is hereby made for a more particular description of said land; and if my son J. Mc. Price die without leaving issue surviving him, then it is my will that said land revert to all my other heirs, equally, in fee-simple, my grandchildren taking *per stirpes* if their parents be dead."

His Honor properly allowed parol testimony to show that the plaintiff had had possession of the 183-acre tract since it was surveyed by Helms, and that he admitted it was the tract he was to receive, and had received, under the compromise.

But the other branch of his contention, in my opinion, ought to be sustained. He requested the Court "to construe the deed of compromise and not leave any part thereof to the jury." We think the Court should have pursued that course. The agreement to devise to the parties, including the plaintiff, "respectively, *with limitations,*" the land belonging to J. W. Price, etc., is too indefinite to convey any meaning. The word "limitations" as it is used in this deed is capable of being applied in so many different ways that we cannot arbitrarily give it a particular definition, or direct it to any particular beneficiary. And if it could be done in any other case we could not in the present one, because, whatever limitations of the estate of either one of the parties might be made, the same would have to be attached to them all; and that has not been done. That an agreement may be valid it is necessary that the parties use language sufficiently clear for it to be understood with reasonable certainty what they mean; and if an agreement is so vague that it is not possible to gather from it the intention of the parties, it is void, for neither

the Court nor the jury can make an agreement for the parties. In *Silverthron v. Fowle*, 49 N. C., 362, the Court said: "And if a contract is so worded that no definite meaning can be attached to it, it is the duty of the Court so to instruct the jury. The Court is no more at liberty to give what was the meaning of the parties than is the jury."